# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GENELLIA YOAKUM

        Plaintiff,

v.                                                                                             Civil Action No.:1:16-CV-34
                                                                                                        (JUDGE KEELEY)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

## **REPORT AND RECOMMENDATION**

## **I. INTRODUCTION**

On March 7, 2016, the Plaintiff, Genellia Yoakum, by counsel, Brian D. Bailey, Esq., filed a complaint in this Court to obtain judicial review of the final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB"). ECF No. 1.

For the reasons discussed below, the Court recommends that the Plaintiff's [ECF No. 8] Motion for Summary Judgement be **DENIED** and the Commissioner's [ECF No. 12] Motion for Summary Judgement be **GRANTED**.

## **II. PROCEDURAL HISTORY**

On July 11, 2011, the Plaintiff filed an application for DIB alleging a disability beginning February 1, 2011. R. 16. The Plaintiff's claim was denied initially on August 29, 2011, and upon reconsideration on October 25, 2011. R. 16. Thereafter, the Plaintiff filed a written request for a hearing on November 1, 2011. R. 16.

The Administrative Law Judge ("ALJ"), Karen B. Kostol, held a hearing on November 27, 2012. R. 16. The Plaintiff, represented by counsel, appeared and offered testimony. R. 16. An impartial Vocational Expert ("VE") also testified at the hearing. R. 16. On November 30, 2012, the

ALJ issued an unfavorable decision to the Plaintiff. R. 13. On March 16, 2015, Magistrate Judge Trumble recommended that the matter be remanded and Judge Keeley subsequently issued a remand order on April 9, 2015. R. 468-518.

On August 31, 2015, the ALJ held a second hearing. R. 385-450. The Plaintiff, represented by counsel, and a VE testified at the second hearing. *Id.* On November 9, 2015, the ALJ again issued an unfavorable decision to the Plaintiff. R. 365-79. The Plaintiff then brought her claim before this Court.

### III. ALJ's FINDINGS

In determining whether the Plaintiff was disabled on remand, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520; 416.920. The first step in the process is determining whether a claimant is currently engaged in substantial gainful activity. *Id.* §§ 404.1520(b); 416.920(b). If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. *Id.* §§ 404.1520(c); 416.920(c). If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* §§ 404.1520(d); 416.920(d). If an impairment meets or equals a listed impairment, the claimant is disabled. *Id.* §§ 404.1520(d); 416.920(d). However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of her impairments.

*Id.* §§ 404.1520(e); 416.920(e).

After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of her past relevant work. *Id.* §§ 404.1520(f); 416.920(f). If the claimant does not have the RFC to do her past relevant work, then she has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experiences. *Id.* §§ 404.1520(g); 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983).

At step one of the sequential process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of February 1, 2011 through her date last insured of March 31, 2013. R. 370. At step two, the ALJ found that the Plaintiff had the following severe impairments: lumbar sprain; right SI joint pain; and history of ankle sprain. R. 371. At the third step, the ALJ found that none of the Plaintiff's impairments met or medically equaled the severity of one of the listed impairments contained in the Listings. The ALJ then determined that the Plaintiff had the RFC to perform:

> light work as defined in 20 C.F.R. 404.1567(b) except could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl; and must have avoided all exposure to hazards (i.e. unprotected heights or dangerous machinery).

R. 371. At step four, the ALJ determined that the Plaintiff was unable to perform any past relevant work. R. 377. At step five, the ALJ determined that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers

in the national economy" thus, the ALJ found that the Plaintiff was not disabled. R. 378.

## IV. MOTIONS FOR SUMMARY JUDGMENT

### A. Legal Standards

#### 1. Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

#### 2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g);1383(c)(3). The ALJ's decision must be upheld if it is supported by substantial evidence. *Id.* §§ 405(g); 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664–65 (1988)

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)).

An ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Walls v. Barnhart*, 296 F. 3d 287, 290 (4th Cir. 2002) (quoting 42 U.S.C. § 405(g)). Moreover, judicial review "of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Id.* (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985)). In reviewing the case to determine whether substantial evidence exists, this Court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Id. (quoting Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)).

**B.     Discussion**

The Plaintiff advances two main arguments. First, the Plaintiff argues that there is evidence that she does not have transferable skills. However, the evidence that the Plaintiff relies on is a question and answer exchange that the Plaintiff materially misquotes in her analysis. In fact, a review of the record shows that there is substantial evidence to support the ALJ's findings that the Plaintiff has transferable skills. The Plaintiff's second argument is an assortment of sub-arguments that the Court finds unpersusavie.

       1.     <u>There is Substantial Evidence that the Plaintiff has Transferrable Skills</u>

The Medical-Vocational Guidelines ("GRIDS") set out combinations of age, education, vocational skills, and RFC which direct a finding of disabled or not disabled. *See* 20 C.F.R. 404 Pt. 404, Subpt. P, App'x 2. A finding of disabled or not disabled as mandated by the GRIDS for an individual, such as the Plaintiff, of advanced age, less than a highschool education, limited to light work, who cannot perform past relevant work, whose previous work experience was skilled or semi skilled hinges on whether the individual has vocational skills that are transferable. A claimant's vocational skills are transferable when "past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1).

The Plaintiff argues that the ALJ erred by finding that the Plaintiff had transferrable skills from her past work as a home attendant to the proposed position as a companion. ECF No. 9 at 5-7. The Plaintiff argues that the VE first testified that the Plaintiff had transferable skills from her work as a home attendant, however, the VE then went on to say that the Plaintiff did not gain transferable work skills from this position. The evidence that the Plaintiff relies on is limited to one question and answer exchange between the Plaintiff's counsel and the VE. The Plaintiff's brief states:

> Counsel then asked:
>
>> So, in reality, these are just everyday tasks that people do that aren't real work skills, but [she's] just changing from a medium job to a light job?
>
> The VE responded:
>
>> Yes.

ECF No. 9 at 6 (citing R. 447). However, the quotation in the Plaintiff's brief is incomplete and leaves out language that materially affects this Court's analysis. The full quotation from the record reads:

> Plaintiff's counsel:

>>So, in reality, these are just everyday task that people do that aren't real work skills, but she's just changing jobs from a medium job to a light job? **Or - - yeah, a light job. Is that correct?**
>
>VE:
>
>>Yes.

R. 447 (missing language emphasized).

The missing language shows that this question is compound and, at best, confusing. Thus, it is impossible for this Court to discern whether the VE was responding to both questions or merely the last one.

Moreover, the VE's testimony immediately before this exchange contradicts the conclusion reached by the Plaintiff:

>Plaintiff's counsel:
>
>>And would you please tell me what skills that she developed as a home - - as a home attendant, at the medium level?
>
>VE:
>
>>You know, she - - typically, a home attendant will help a person cook a meal, prepare meals, do light cleaning, do care such as assisting in bathing and taking care of the activities of daily living, you know such as, you know cleaning oneself, bathing, and what have you. Those same skills would apply to working as a companion, but with the elimination of the bathing and assisting in the mobility for - - the individual.

R. 446-47. Therefore, this evidence does not stand for what the Plaintiff asserts.

The Plaintiff further argues that Social Security Ruling ("SSR") 82-41(d) supports her argument that she did not gain transferable work skills. SSR 82-41(d) provides:

>Transferability of skills is not usually found from this rather simple type of work. When job activities are at this minimal level of skill, an adjudicator or [ALJ] can often, without assistance, make the determination that the worker has very little vocational advantage over an unskilled person and does not have transferable skills.

However, SSR 82-41 does not establish a categorical rule that this type of work does lead to transferable skills. Indeed, 20 C.F.R. § 404.1568(d)(2) explains that:

[T]ransferability is most probable and meaningful among jobs in which—

    (i)    The same or a lesser degree of skill is required;

    (ii)    The same or similar tools and machines are used; and

    (iii)    The same or similar raw materials, products, processes, or services are involved.

Furthermore, 20 C.F.R. § 404.1568(d)(3) explains that, "[t]here are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary for transferability."

Here, the ALJ relied on testimony from the VE that the Plaintiff's past relevant work as a home attendant required the same skills as a companion "with the elimination of the bathing and assisting in the mobility for - - the individual." R. 447. Therefore, the VE's testimony shows that the three prong balancing test weighs towards a finding that the Plaintiff had transferable skills.

Thus, the Plaintiff' s first argument is unpersuasive because the Plaintiff's evidence is based on a material mischarachterization and her reading of SSR 82-41 is an incomplete reading of the law.

    2.    <u>Substantial Evidence Supports the ALJ's Analysis of the Medical Evidence</u>

The Plaintiff's second argument is an assortment of sub-arguments challenging the ALJ's analysis of the medical evidence. The Court is unpersuaded by the Plaintiff's arguments and will address each in turn.

    a.    *The ALJ Complied with the Law in Weighing Dr. Kirk's Opinion*

The Plaintiff argues that the ALJ improperly discredited Dr. Kirk's RFC because it was a

"rare" RFC when, according to the Plaintiff, Dr. Kirk's RFC was not rare. ECF No. 9 at 9. The ALJ stated that Dr. Kirk's RFC was a "less than sedentary [RFC], which is considered quite rare." R. 375. Indeed, SSR 96-9p explains that an RFC below the sedentary work level is rare. However, the Plaintiff argues that Dr. Kirk's opinion that the Plaintiff "'may lift up to 10 lbs. occasionally' as well as '5 lb. limit for frequent'" *id*. (*quoting* R. 281) fits squarely within the definition of sedentary work under 20 C.F.R. § 404.1567. Yet, "the ALJ portrays such limitations to be a 'below sedentary RFC.'" ECF No. 9 at 9 (quoting R. 375-76). Therefore, the Plaintiff argues the ALJ erred by "arbitrarily discount[ing] Dr. Kirk's RFC as one that is 'rare'" when Dr. Kirk's RFC actually fit squarely within sedentary work. ECF No. 9 at 9.

The limitations imposed by Dr. Kirk, however, do not fit squarely within the definition of sedentary work. Sedentary work is defined as, "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carrying out job duties." 20 C.F.R. § 404.1567(a). The five-pound limitation for "frequent" lifting imposed by Dr. Kirk is found nowhere in the sedentary work definition therefore, Dr. Kirk's assessment is less than sedentary. Furthermore, Dr. Kirk's assessment limited the Plaintiff from "prolonged standing or sitting." R. 281, 290. However, sedentary work requires "sitting" therefore, Dr. Kirk's assessment further restricted the Plaintiff to less than sedentary work.

Moreover, the Plaintiff's argument that the ALJ improperly weighed Dr. Kirk's opinion rests on merely one allegedly flawed reason. However, the ALJ gave an extensive explanation beyond the allegedly flawed reason for the weight accorded to Dr. Kirk's opinion:

> Based on the evidence as a whole, this opinion is entitled to little weight. In October 2011, Dr. Kirk reported that the claimant should avoid prolonged sitting or standing.

He opined that the claimant would be capable of lifting 10 pounds occasionally and five pounds frequently (Exhibit B2F). Dr. Kirk identified several notable findings. Dr. Kirk noted that the claimant had limited flexion of her back secondary to pain. Dr. Kirk stated that the claimant had increased pain when standing on her right foot. Dr. Kirk reported that the claimant had bilateral para vertebral spasm and right SI joint tenderness. Dr. Kirk described the claimant's gait as antalgic. These findings, in and of themselves, are not supportive of a less than sedentary residual functional capacity, which is considered quite rare (SSR 96-9p). As discussed above, the claimant admitted that her pain had been intermittent, which is inconsistent with an intractable condition that would limit the claimant to less than sedentary residual functional capacity. She has admitted to significant activities of daily living, including childcare. Moreover, there are no objective studies for the time period which Dr. Kirk prepared his report. As discussed above, recent objective studies showed relatively minor abnormalities without instability, stenosis, or nerve root impingement. These findings are not supportive of a less than sedentary residual functional capacity.

Turning to the State agency consultant opinion, . . . [t]he undersigned finds the physical residual functional capacity assessment prepared by Dr. Subhash Gajendragadkar, M.D., is entitled to substantial weight. This source assessed that the claimant could perform medium work activities. Dr. Gajendragadkar explained that the limitations identified by Dr. Kirk are disproportionate to the exam and x-ray findings:

> 10/5/11 physical abstract form returned stating the pt was last seen on 8/31/11. She was in an MVA on 2/1/11. She suffered a Right SI Joint sprain, Left side strain/pain, myofascial pain and a right ankle sprain. Exertional statement is that she should avoid prolonged standing and sitting. She may lift no more than 10 pounds occasionally and 5 pounds frequently. Low back ROM was considered abnormal. She has limited flexion due to pain. She has increased pain when standing on her right foot. She has bilateral paravertebral spasm. She has Right side joint tenderness. Gait is antalgic. Mauro, cardiopulmonary and special sense exams were normal.

Exhibit B5F /8. As discussed above, there is unsufficient evidence to support a finding that the claimant can only perform sedentary work, and thus, the opinion of Dr. Kirk is unsupported. Dr. Gajendragadkar's opinion further supports this conclusion. Dr. Gajendragadkar possessed superior understanding of Social Security Administration regulations and rules for determining disability, and he considered the some [sic] findings identified by Dr. Kirk and reached starkly different conclusions. His superior expertise renders his opinion more persuasive. Even assuming, arguendo, that the claimant was incapable of medium exertional work subsequent to October 2011 (when the State agency consultant was prepared), there

is still insufficient evidence to conclude that the claimant was subsequently limited to sedentary exertional work. Given the presence of reduced range of motion, the undersigned has limited to the claimant to light work activities, which requires lifting, at most, 20 pounds. This does not reflect any fallacy with Dr. Gajendrngadkar's reasoning, but rather is a function of according the claimant the utmost benefit of the doubt.

R. 375-76.

Therefore, the Court is unpersuaded by the Plaintiff's argument because the ALJ correctly determined that Dr. Kirk's RFC was less than sedentary. Moreover, the ALJ gave reasons beyond the allegedly flawed reason for discrediting Dr. Kirk's opinion which are supported by substantial evidence.

> b. *The ALJ's Discussion of the Intractable Nature of the Plaintiff's Conditions is Unrelated to the Plaintiff's Credibility*

The Plaintiff argues that her symptoms do not need to be intractable for the "[ALJ] to credit the severity, persistence, and functional effects of her symptoms." ECF No. 9 at 9. The Plaintiff argues, "the Defendant clearly recognizes that symptoms do not have to be 'intractable' in order to be considered believable." *Id.* (*citing* SSR 16-3p). The Plaintiff further argues "[she] does not deserve less credibility based on her pain waxing and waning depending on what activity she is performing. Consequently, Dr. Kirk's RFC does not deserve to be given less weight based on the ALJ's mischaracterization of the Defendant's rules and [the Plaintiff's] complaints." ECF No. 9 at 9. However, the Plaintiff misunderstands the ALJ discussion.

The ALJ's opinion states:

These findings, in and of themselves, are not supportive of a less than sedentary residual functional capacity, which is considered quite rare (SSR 96-9p). As discussed above, the claimant admitted that her pain had been intermittent, which is inconsistent with an intractable condition that would limit the claimant to less than sedentary residual functional capacity.

R. 375. The ALJ's discussion of the intractable nature of the Plaintiff's conditions is unrelated to the Plaintiff's credibility. Rather, the ALJ's discussion relates to whether the Plaintiff's symptoms are consistent with a less than sedentary RFC. Therefore, this is an appropriate analysis in determining the weight given to Dr. Kirk's less than sedentary RFC.

      *c.*      *Activities of Daily Living Weigh Against a Finding of a Less Than Sedentary RFC*

Below is the Plaintiff's argument in its entirety:

> The ALJ indicates that Ms. Yoakum "admitted to activities of daily living, including childcare." Tr. 375. The ALJ does not explain why such evidence contradicts Dr. Kirk's RFC, particularly when the workforce is filled with sedentary workers who perform activities of daily living every day. The performance of activities of daily living is not inconsistent with a sedentary RFC.

ECF No. 9 at 10.

The Plaintiff misunderstands the ALJ's discussion. The ALJ's discussion relates to whether the Plaintiff is limited to *less than* sedentary work. Perhaps the "workforce is filled with sedentary workers who perform activities of daily living everyday" however, these activities could be indicative that the Plaintiff's RFC is not less than sedentary. Indeed, the ALJ explained that, "childcare can be demanding, both physically and emotionally, and the fact that the claimant had shared responsibility for these children is at odds with the very limited activities of daily living she reported at the prior hearing." R. 374.

      *d.*      *Substantial Evidence Supports the ALJ's Analysis of Dr. Kirk's Opinion*

The Plaintiff states that, "[t]his Court previously indicated that substantial evidence did not support the ALJ's argument that Dr. Kirk's RFC was inconsistent with the physical therapy records." ECF No. 9 at 10 (*citing* R. 512). Preliminarily, counsel for the Plaintiff mistakes the

ALJ's discussion for an "argument." It is not an argument—it is a decision. Turning to the Plaintiffs claims, she advances four arguments, and additional sub-arguments, that the ALJ's decision is unsupported by substantial evidence. The Court is unpersuaded by these arguments.

First, the Plaintiff argues that this Court held that the ALJ's reliance on the Plaintiff's physical therapy records as a reason to discredit Dr. Kirk was unsupported by substantial evidence. R. 511-12. The Plaintiff argues that, "this Court's prior findings and the subsequent physical therapy records continue to show objective evidence of [the Plaintiff's] limitations." ECF No. 9 at 11.

The Plaintiff misunderstands this Court's prior discussion. The ALJ found that the physical therapy records were inconsistent with Dr. Kirk's opinion. R. 512. However, the ALJ did not indicate which records were inconsistent and a review of the records did not show inconsistencies. R. 512. Therefore, the Court explained that this reason for discounting Dr. Kirk's opinion was unsupported by substantial evidence. Here however, the ALJ did not rely on the physical therapy notes in weighing Dr. Kirk's opinion and, as discussed in section 2-a of this opinion, the ALJ gave extensive reasoning for the weight accorded to Dr. Kirk's opinion.

Second, the Plaintiff argues that "the ALJ accepted [the Plaintiff's] severe impairments to include: lumbar sprain, right SI joint, and history of ankle sprain. R. 370. The ALJ then seems to argue that 'mild' results are not consistent with [the Plaintiff's] complaints." ECF No. 9 at 11. The Plaintiff advances three sub-arguments. One, the ALJ "utilizes her own medical opinion to decide 'mild' complaints cannot support the severity of [the Plaintiff's] complaints." *Id.* The Plaintiff does not give any analysis or support this argument beyond asserting her conclusion. Indeed, a review of the ALJ opinion shows that nowhere does she characterize the Plaintiff's complaints as "mild."

Furthermore, the ALJ did not rely on her own "medical opinion" but rather the opinion of Dr. Gajendragadkar. Two, the Plaintiff argues that "the ALJ ignores evidence that this Court previously highlighted." *Id.* However, the Plaintiff does not indicate which evidence the ALJ allegedly ignored. Three, the Plaintiff argues that "the ALJ perpetuates her initial error of mischaracterizing Dr. Kirk's RFC by arguing that such 'mild abnormalities' are not consistent with a less than sedentary RFC." *Id.* As discussed in section 2-a of this opinion, the ALJ did not mischaracterize her assessment of Dr. Kirk's opinion.

Third, the Plaintiff argues that, "the ALJ indicates that there are no objective studies during the time period which Dr. Kirk prepared his report. R. 375. Such argument deserves no merit as the ALJ is required to assess the record as a whole and not focus on one particular period of time." ECF No. 9 at 11 (*citing* SSR 16-3p). Dr. Kirk's report relates to a particular period of time. In weighing Dr. Kirk's opinion it is appropriate to consider whether during that period of time there were any studies that Dr. Kirk could have considered in reaching his opinion.

Fourth, the Plaintiff argues:

[T]he Defendants's SSR 16-3p indicates that:

"However, we will not disregard an individuals's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."

So, the ALJ's proclamation that the alleged lack of objective evidence is a reason for discounting Dr. Kirk's opinion is not supported by the Defendant's own rules.

ECF No. 9 at 12. The Plaintiff misunderstands the language which she quotes. The plain language from the Plaintiff's quote shows that SSR 16-3p applies to statements by the individual and not a

physician. Therefore, a lack of objective evidence is not barred by SSR 16-3p as a factor in weighing a physician's opinion.

### e. *The ALJ's Reliance on Dr. Gajendragadkar's Opinion is Clear*

The Plaintiff argues that the ALJ "failed to give clear weight to the medical opinion of . . . Dr. Galendragadkar." ECF No. 9 at 12. The Plaintiff advances three arguments, along with sub-arguments, to support her conclusion. However, a cursory review of the record shows that the Plaintiff's conclusion is incorrect. Indeed, the ALJ states that, "the undersigned finds that the physical [RFC] assessment prepared by Dr. Subhash Gajendragadkar, M.D., is entitled to substantial weight." R. 375. Nevertheless, this opinion addresses each of the Plaintiff's arguments in turn.

#### i. The ALJ did not Err by Limiting the Plaintiff to Light Work

The Plaintiff argues that the weight given to Dr. Gajendragadkar's opinion is unclear because Dr. Gajendragadkar limited the Plaintiff to medium work however, the ALJ determined her RFC to be limited to light work. ECF No. 9 at 12. The ALJ, however, explained that limiting the Plaintiff to light work "does not reflect any fallacy with Dr. Gajendrngadkar's reasoning, but rather is a function of according the claimant the utmost benefit of the doubt." R. 376. The Plaintiff here argues against her own interest because an individual limited to light work is more likely to be disabled than an individual limited to medium work. Therefore, the ALJ did not err by giving the Plaintiff the benefit of the doubt.

#### ii. The ALJ Properly Considered the Evidence

The Court is unpersuaded by the Plaintiff's argument titled: "The ALJ's reference to Dr. Gajendragadkar's opinion that Dr. Kirk's opinion was disproportionate to the exam and x-rays does not provide adequate insight into the ALJ's position." ECF No. 9 at 12. As explained in section IV-

A-2 of this opinion, the proper standard of review is substantial evidence and not "adequate insight."

The Plaintiff advances three sub-arguments. First, the Plaintiff argues that "[t]he ALJ is re-hashing her arguments that this Court already rejected" when this Court found that the ALJ's opinion was unsupported by substantial evidence. ECF No. 9 at 12. However, the Plaintiff does not provide this Court with an analysis to support this conclusion therefore, it is impossible to know what "arguments" are allegedly rehashed. A review of the record shows that the decision from the ALJ on remand (R. 365- 379) complied with this Court's remand order. R. 468-517. Indeed, this Court stated that, "[w]hile the ALJ stated that Dr. Kirk's opinion is inconsistent with the state agency physician's opinion, she failed to point to any specific inconsistencies in the record or provide an explanation to allow the Court to follow her reasoning." R. 511. However, the ALJ on remand discussed that Dr. Gajendragadkar found that Dr. Kirk's findings were disproportional to the exam and x-ray findings. R. 375. Thus, because the ALJ provided this analysis for the first time on remand it cannot be said that the ALJ "re-hashed her arguments."

Second, the Plaintiff argues that "Dr. Kirk's opinion does not necessarily result in limited to no weight simply because of one piece of evidence. . . ." ECF No. 9 at 12. As discussed at length above, the ALJ did not discredit Dr. Kirk's opinion because of one piece of evidence. Indeed, the ALJ extensively explained her reasoning. Therefore, the Plaintiff's argument is without merit.

Third, the Plaintiff argues that "the ALJ [did] not so much as question Dr. Gajendragadkar's opinion when such opinion is inconsistent with Dr. Kirk's RFC, [the Plaintiff's] physical therapy records, and records from Belington Clinic." ECF No. 9 at 13. The Court is unpersuaded by this argument because the ALJ discussed her reasoning for discrediting these opinions and her reasoning is supported by substantial evidence. As discussed above, the ALJ extensively explained her

reasoning for discrediting Dr. Kirk's opinion. Moreover, the ALJ considered the Plaintiff's medical records:

> The claimant resumed physical therapy in 2015, but at that time, she underwent objective studies that did not suggest debilitating physical functional limitations. X-rays of the lumbar spine showed L2-3 degenerative disc change without instability. There was no spondylolysis or spondylolisthesis. There was no mention of significant stenosis or nerve root impingement (Exhibit Bl2F/13). X-rays of the hips were normal (Exhibit Bl2F/12). Physical therapy treatment notes did indicate an antalgic gait and decreased range of motion, but straight leg raise was negative (Exhibit Bl6F/3). These findings are not inconsistent with the ability to perform light exertional work. Further, it is difficult to find a significant connection between the physical therapy records and the claimant's condition two years earlier. A person's health is not static and is subject to change with the passage of time and other potentially aggravated factors. Thus, even if the 2015 physical therapy records were suggestive of a debilitating condition (they are not), it does not necessarily mean that claimant was so limited in March 2013.
>
> Overall, the medical evidence of record does not support the claimant's allegations concerning the severity of her symptoms during the period at issue. As noted in the prior decision, the claimant exhibited decreased range of motion, and she underwent physical therapy. These suggest genuine symptoms. She also underwent invasive injections, and she took pain medications. Her treatment was sporadic, but she attributed this to the inability to pay for treatment due to a lack of insurance. Yet, the record reflects that she settled a law suit over her motor vehicle accident in 2013, and the frequency of her treatment has not significantly increased with her current apparent ability to pay for treatment. Moreover, the objective studies from the recent treatment were not suggestive of conditions that could be expected to cause pain as severe as the claimant has alleged. As discussed above, the x-rays of the lumbar spine showed only degenerative changes without spinal stenosis or nerve root impingement, and recent straight leg raise was negative. Finally, while the claimant has alleged some significant limitations in her activities of daily living, the record reflects that she has been apparently caring for 3 children during the entire period at issue.

R. 373. Thus, the ALJ considered and explained her reasoning for rejecting the Plaintiff's cited evidence.

### iii. The ALJ did not Create an Improper Presumption

The Plaintiff argues that the "ALJ created an improper presumption that Dr. Gajendragadkar's assessment was de facto correct simply because Dr. Gajendragadkar was familiar and possessed 'superior expertise' of the Defendant's rules and regulations." ECF No. 9 at 13. The Court is unpersuaded by the Plaintiff's argument. Indeed, 20 C.F.R. § 404.1527(e)(2)(i) explains that state agency medical consultants are highly qualified and that it is proper for the ALJ to consider their opinions as evidence. However, this did not create a presumption as the Plaintiff asserts. In fact, this was merely one reason the ALJ gave for crediting Dr. Gajendragadkar's opinion. For example, the ALJ explained that Dr. Gajendragadkar's opinion was consistent with objective evidence and thus, entitled to more weight. *See* R. 375 (discussing that, "there is unsufficient evidence to support a finding that the claimant can only perform sedentary work, and thus, the opinion of Dr. Kirk is unsupported. Dr.Gajendragadkar's opinion further supports this conclusion").

## V. RECOMMENDATION

Based on the foregoing, the court concludes that the ALJ's decision complied with the applicable law and regulations, and it was based on substantial evidence. Accordingly, the court **RECOMMENDS THAT**:

1. Plaintiff's [ECF No. 8] Motion for Summary Judgment be **DENIED**; and
2. Commissioner's [ECF No. 12] Motion for Summary Judgment be **GRANTED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.

A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: October 19, 2016

*/s/ James E. Seibert*
**JAMES E. SEIBERT**
**U.S. MAGISTRATE JUDGE**