IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GENELLIA P. YOAKUM,**

    **Plaintiff,**

**v.**                    //    CIVIL ACTION NO. 1:16cv34
                               (Judge Keeley)

**CAROLYN COLVIN,**
**ACTING COMMISSIONER**
**OF SOCIAL SECURITY,**

    **Defendant.**

              **MEMORANDUM OPINION AND ORDER ADOPTING**
              **REPORT AND RECOMMENDATION [DKT. NO. 16]**

Pending before the Court is the Report and Recommendation ("R&R") of the Honorable James E. Seibert, United States Magistrate Judge (Dkt. No. 16), regarding the parties' competing motions for summary judgment. For the reasons that follow, the Court **ADOPTS** the R&R in its entirety, **OVERRULES** the plaintiff's objections, **GRANTS** the defendant's motion for summary judgment, and **DENIES** plaintiff's motion for summary judgment.

                        **I. BACKGROUND**

On July 11, 2011, the plaintiff, Genellia Yoakum ("Yoakum"), filed a claim for disability insurance benefits ("DIB"), alleging that she had become disabled on February 1, 2011. (Dkt. No. 16 at 1). The Social Security Administration denied Yoakum's claim on August 29, 2011, and again upon reconsideration on October 25, 2011. Id. As a result, Yoakum filed a written request for a hearing on November 1, 2011. (Dkt. No. 16 at 1). The Administrative Law

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [DKT. NO. 16]**

Judge ("ALJ"), Karen B. Kostol, conducted a hearing on November 27, 2012, at which Yoakum, represented by counsel, appeared and offered testimony. Id. Additionally, an impartial vocational expert testified at the hearing. Id. On November 30, 2012, the ALJ issued a decision unfavorable to Yoakum, finding that she was not disabled within the meaning of the Social Security Act. Id. at 2.

On April 25, 2014, pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), Yoakum filed a complaint in this Court against Carolyn Colvin, acting Commissioner of the Social Security Administration ("Commissioner"), seeking judicial review of the Commissioner's final decision. (See Civil Action No. 1:14-cv-74, Dkt. No. 1). The Court referred that matter to United States Magistrate Judge Robert W. Trumble, who entered an R&R on March 16, 2015. That R&R recommended that the matter be remanded to the Commissioner to determine, inter alia, whether Yoakum's former position was a composite job and, if so, whether she had the residual functional capacity ("RFC") "to perform the exertional demands of both components" of the composite job. See Yoakum v. Commissioner of Social Security, 2015 WL 1585745 at *25 (N.D.W.Va. April 9, 2015). Additionally, the R&R directed the Commissioner to assign weight to the state agency physician's opinion that the ALJ had relied on in making her decision to deny benefits, and also to

2

provide an explanation for why she assigned such weight. Id.

On remand, the ALJ held a second hearing on August 31, 2015, at which Yoakum and a vocational expert again testified, following which she again issued an unfavorable decision to Yoakum. On March 3, 2016, Yoakum filed suit in this Court seeking judicial review of the Commissioner's second denial of disability benefits. On May 10, 2016, the Commissioner filed its answer, together with the Social Security Administration record. (Dkt. Nos. 1, 5, and 6). Yoakum and the Commissioner each moved for summary judgment on June 7, 2016, and August 16, 2016, respectively.

For this second civil action, the Court referred the matter to United States Magistrate Judge James E. Seibert, who issued his R&R on October 19, 2016, recommending that the Court deny Yoakum's motion for summary judgment and grant the Commissioner's motion for summary judgment. Id. Yoakum timely filed her objections to the R&R on October 31, 2016. (Dkt. No. 17).

## II. STANDARD OF REVIEW

**A. Review of the Report and Recommendation**

Pursuant to 28 U.S.C. § 636(b)(1)(c) (2012), this Court must review de novo any portions of a magistrate judge's R&R to which objections have been filed. However, when a party makes only "general and conclusory objections that do not direct the court to

a specific error in the Magistrate's proposed findings and recommendations," the Court need not conduct a de novo review. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a specific objection, the Court will only review the magistrate judge's conclusions for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

**B. Review of the Commissioner's Final Decision**

This Court's review of a final decision regarding a DIB claim is limited to (1) whether the ALJ's findings are supported by substantial evidence, see Richardson v. Perales, 402 U.S. 389, 390 (1971), and (2) whether the ALJ applied the correct law. See 42 U.S.C. § 405(g) (2012); Stricker v. Colvin, 2016 WL 543216, at *1 (N.D.W. Va. Feb. 10, 2016). "Substantial evidence" means "more than a mere scintilla" of evidence and is that which a "reasonable mind might accept as adequate to support a conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Sec'y of Labor v. Mutual Mining, Inc, 80 F.3d 110, 113 (4th Cir. 1996) (quoting Conolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)).

Importantly, the issue is not whether the claimant is disabled, but whether the ALJ's finding of disabled or not is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Mayer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Thus, the Court does "not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its own] judgment for that of the [ALJ's]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Instead, making findings of fact and resolving conflicts in the evidence is the province of the ALJ reviewing the case. See King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979). Therefore, if substantial evidence exists to support the ALJ's finding, and the correct legal standard was applied, the ALJ's conclusion must be affirmed. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

### III. APPLICABLE LAW

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To reach a finding of disability, the ALJ must apply a five-step, burden-

shifting process set out in 20 C.F.R. § 404.1520. The initial burden of proof is on the claimant to show that she is unable to perform her previous work because of impairment. See McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983).

At step one, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, the ALJ moves to the second step to analyze whether the claimant has a medically determinable impairment or combination of impairments that are severe. Id. § 404.1520(c). If so, the analysis moves to the third step, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. § 404.1520(d). If they do, the claimant is disabled. Id. § 404.1520(d). If the impairment does not, however, meet or equal a listed impairment, the ALJ must then assess the claimant's residual functional capacity ("RFC"), which represents the claimant's ability to do physical and mental work activities on a sustained basis despite her impairment's limitations. Id. § 404.1520(e).

Once the ALJ establishes the claimant's RFC, the analysis moves to step four, under which ALJ must determine whether the claimant, based on her RFC, can perform past relevant work. Id. §

404.1520(f). If the claimant cannot, then she has presented a prima facie case of disability, and the ALJ moves to the final step of the process. At this fifth and final step, however, the burden shifts to the Commissioner to overcome the prima facie case by establishing that the claimant has a sufficient RFC to engage in "other work." Id.; see McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983). The ALJ must determine whether "other work" exists in significant numbers in the national economy (either in the region where the claimant lives or in several regions in the country) that the claimant is capable of performing based on her age, education, work experience, and RFC. Id. § 404.1520(g). Finally, if the claimant can adjust to such "other work," then the ALJ will conclude that the claimant is not disabled. Id.

## IV. DISCUSSION

Yoakum's objections to the R&R are lengthy, repetitive, and often overlapping. The Court will review de novo only those objections that discuss a specific error in the R&R. The gravamen of Yoakum's objections can be separated into four questions: (1) did the ALJ address evidence suggesting that Yoakum lacked transferrable skills; (2) did the ALJ mistakenly assign an RFC of "light,"; (3) did the ALJ improperly discount Yoakum's credibility regarding the level of her pain; and (4) did the ALJ fail to

adequately discuss evidence contrary to her decision. For the reasons that follow, the Court overrules Yoakum's objections.

**A. The ALJ Properly Addressed Whether Yoakum had Transferrable Skills**

Yoakum argues that, in ruling that she had transferable skills, the ALJ did not address relevant evidence conflicting with her conclusion. She contends that the ALJ failed to consider all of the vocational expert's relevant testimony suggesting that Yoakum did not have transferable skills, but instead only performed simple tasks that did not equate to transferrable work skills. (Dkt. 17 at 4). Specifically, Yoakum argues that the R&R utilized a "post-hoc rationalization" to justify an issue that the ALJ did not address in her decision. She claims the R&R draws attention to particular language from the administrative hearing in an attempt to support a conclusion that the vocational expert gave conflicting testimony:

> Q: So, in reality, these are just everyday tasks that people do that aren't real work skill, but [she's] just changing from a medium job to a light job?
>
> A: Yes.

(Dkt. No. 16 at 6). However, the R&R rightfully notes that Yoakum's quote is incomplete, leaving out material language:

> Q: So in reality, these are just everyday tasks that people do that aren't real work skills, but [she's] just changing jobs from a medium job to a light job? Or - - yeah, a light job. <u>Is that correct</u>?

Id. at 7 (emphasis added). Yoakum argues that, despite the compound nature of the question, neither the vocational expert nor the ALJ indicated that the question was confusing at the time it was asked and that the only time it was considered "confusing" or "compound" was in the R&R. (Dkt. No. 17 at 2).

Yoakum's argument misses the point. The R&R did not rely on a post-hoc rationalization to uphold the ALJ's decision. Rather, the ALJ justified her decision on the remainder of the vocational expert's testimony, and the R&R merely illustrated that Yoakum's reliance on the "confusing question" was misplaced. For example, even if it is unclear whether the vocational expert was answering "yes" to both parts of the question or only to one part, the expert explicitly testified that Yoakum has transferable skills at the medium level:

> Q: And would you please tell me what <u>skills</u> that she developed as a home . . . as a home attendant, at the medium level?
>
> A: You know, she - - typically, a home attendant will help a person cook a meal, prepare meals, do light cleaning, do care such as assisting in bathing and taking care of the activities of daily living, you know such as, you know cleaning oneself, bathing, and what have you. Those same <u>skills</u> would apply to working as a companion, but with the elimination of the bathing and assisting in the mobility for - - the individual.

(Dkt. No. 16 at 7) (emphasis added).

Furthermore, the vocational expert was asked on two additional occasions whether Yoakum had developed transferable skills. First, the ALJ inquired:

> Q: Did the claimant have skills from her past work that would transfer into the light [RFC] given?
>
> A: Yes, Your Honor. There would be the work of a companion. This is a light and semi-skilled job . . . . .

(Dkt. No. 6-10 at 79). Later, Yoakum's attorney queried:

> Q: Now it's my understanding . . . that you first testified that the home attendant was a medium job . . . .
>
> A: Correct.
>
> Q: And it's my understanding that's either unskilled or semi-skilled.
>
> A: That's semi-skilled.
>
> Q: And then you named a companion job, at the light level, that these skills of the semi-skilled job transferred into.
>
> A: Yes.

Id. at 83. As such, no post-hoc rationalization was used to justify the ALJ's position on the evidence, or even to justify "contradictory testimony." Rather, when the R&R stated that the question was "confusing at best," it merely underscored the weakness in Yoakum's argument and illustrated that, in isolation,

10

the question was a mischaracterization of the testimony.

Ultimately, the Court is tasked with determining whether the ALJ's findings rest on sufficient analysis, supported by substantial evidence, to enable it to "track the ALJ's reasoning." McIntire v. Colvin, 2015 WL 401007, at *5 (N.D.W.Va. Jan. 28, 2015). The Court concludes that sufficient evidence exists to persuade a reasonable person that Yoakum had transferable skills, and therefore **OVERRULES** her objection on this issue.

**B.   The ALJ Properly Assigned an RFC of "Light"**

Yoakum next takes issue with the ALJ's finding that she had an RFC of "light," even though Dr. Kirk had concluded that her RFC was "less than sedentary" and Dr. Gajendragadkar had concluded that her RFC was "medium." Although the R&R states that she received "the benefit of the doubt," Yoakum questions this when neither doctor specifically found an RFC of light. (Dkt. No. 17 at 10). Yoakum argues that the ALJ utilized conflicting evidence as a basis to apply her own medical opinion in concluding that she was capable of light work. Id. Further, Yoakum argues that Dr. Gajendragadkar's opinion does not satisfy many of the factors for evaluating opinion evidence and that the ALJ improperly discounted Dr. Kirk's opinion. Id. at 12.

Medical opinions are considered together with the rest of the

evidence that the ALJ receives. 20 C.F.R. § 404.1527. A treating source's opinion receives controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, is should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). In such cases, the ALJ retains "discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

When deciding not to give a treating physician's medical opinion controlling weight, an ALJ must consider and apply the following factors in assigning weight to other medical opinions: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the amount of relevant evidence to support an opinion; (4) consistency of the medical opinion with the record; (5) the doctor's specialization when the opinion is related to that specialty; and (6) and other relevant factors brought to the ALJ's attention. 20 C.F.R. 404.1527(c). The ALJ need not list each of

these factors, so long as her reasoning considers all those that are pertinent. Hamm v. Colvin, 2015 WL 165302, at *9 (E.D.W. Va. Jan 12, 2015) (citing Burch v. Apfel, 9 Fed. App'x 225, 259-60 (4th Cir. 2001)). Although the ALJ must not "play doctor" or come to her own medical opinion,[1] the final responsibility for deciding the claimant's RFC is reserved to the ALJ. 20 C.F.R. § 404.1527.

When the ALJ gave Yoakum the "benefit of the doubt" by assigning her a light RFC, she plainly rejected Dr. Kirk's RFC of "less than sedentary,"[2] as well as an RFC of "sedentary." (Dkt. No. 6-10 at 13-14). The ALJ explained that Dr. Kirk's opinion lacked the support of objective medical studies. See Dkt. No. 6-10 at 12-13. Indeed, she found his opinion to be inconsistent with the conclusions reached in those studies. Moreover, in rejecting Dr. Kirk's opinion, the ALJ relied on "the sparse treatment records, the objective studies from those treatment records, the claimant's activities of daily living, and the reasoned opinion of the State agency consultant," all persuasive contrary evidence. (Dkt. No. 6-

---

[1] See, e.g., Forquer v. Colvin, 2016 WL 4250364 at *19 (N.D.W. Va. 2016) (citing Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990) and Wilson v. Califano, 617 F.2d 1050, 1053-54 (4th Cir. 1980)).

[2] The ALJ cited to Social Security Ruling 96-9p, 1996 WL 374185, which holds that an RFC of less than sedentary "is expected to be relatively rare."

10 at 14).

Conversely, the ALJ noted no such shortcomings in Dr. Gajendragadkar's reasoning. She assigned his opinion substantial weight because objective studies supported his conclusion, and his "superior expertise" and "understanding of Social Security Administration regulations and rules for determining disability" rendered his opinion more persuasive. (Dkt. No. 6-10 at 12-13).

Based on her evaluation, the ALJ clearly could have assigned Yoakum an RFC of medium and denied her DIB benefits. Rather, she gave Yoakum the benefit of the doubt and applied the slightly more favorable RFC:

> Even assuming, arguendo, that the claimant was incapable of medium exertional work . . . there is still insufficient evidence to conclude that the claimant was subsequently limited to sedentary exertional work. . . . This does not reflect any fallacy with Dr. Gajendragadkar's reasoning, but rather is a function of according the claimant the utmost benefit of the doubt.
>
> . . .
>
> During the period at issue, . . . the findings were insufficient to limit the claimant to sedentary work activities. She was capable of light work activities prior to her date last insured.

(Dkt. No. 6-10 at 13-14).

Yoakum provides no support for her argument that the ALJ's RFC rating had to match exactly either Dr. Kirk's or Dr.

14

Gajendragadkar's rating. See, e.g., Gordils v. Sec'y of Health and Human Svcs., 921 F.2d 327, 329 (1st Cir. 1990)(noting that an ALJ is free to make common-sense judgments about functional capacity based on medical findings). Further, the evidence is clear that, had she been required to choose one or the other, the ALJ would have agreed with Dr. Gajendragadkar's RFC rating of medium. Accordingly, the Court concludes that the ALJ appropriately evaluated the competing medical opinions and properly assigned Yoakum an RFC of light.

**C.   The ALJ did not Improperly Discount Yoakum's Credibility as to the Level of her Pain**

Yoakum argues that, because pain can wax and wane, intermittence is not a reason to discount a claimant's credibility or a medical opinion. She argues that the ALJ discounted her credibility as a means to then discount the credibility of Dr. Kirk and his RFC. Additionally, Yoakum argues that evidence of her daily living should not have been used to lessen her credibility.

An ALJ will not find an individual to be disabled based on alleged symptoms alone. See Social Security Ruling 96-7p, 1996 WL 374186, at *2.[3] Nor may an ALJ reject a claimant's statements about

---

[3] The Court recognizes that SSR 16-3p has superseded SSR 96-7p, but because this case was adjudicated prior to the effective date of March 28, 2016, SSR 96-7p still applies.

15

her symptoms solely because "they are not substantiated by objective medical evidence." Id. In evaluating a claimant's symptoms, including pain, the ALJ must use a two step process. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. Id. Next, if an underlying physical impairment that could reasonably be expected to produce the symptoms is established, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. Id. If the statements are not substantiated by objective medical evidence, the ALJ must make a finding on the claimant's credibility based on consideration of the entire case record, including medical history, objective medical evidence, and her own statements about her symptoms. Id.

Here, the ALJ did not reject Yoakum's description of her pain out of hand, but instead acknowledged that her impairments could reasonably be expected to cause her alleged symptoms. (Dkt. No. 6-10 at 9). However, she did find that Yoakum's descriptions of her intermittent pain were inconsistent with an intractable and debilitating condition, or her admittedly significant activities of daily living, including childcare. (Dkt. No. 6-10 at 12). Further,

16

although Yoakum had testified to "severe back pain" at her initial hearing, her doctors noted unremarkable symptoms. Finally, recent objective medical evaluations "showed relatively minor abnormalities without instability, stenosis, or nerve root impingement." Id. From this, the ALJ ultimately concluded that Yoakum's allegations of the severity of her symptoms. As discussed above, there was substantial evidence to discount Dr. Kirk's opinion. (Dkt. No. 6-10 at 10).

For these reasons, the Court concludes that the ALJ properly evaluated Yoakum's credibility and gave her testimony appropriate weight. It therefore overrules this objection.

**D.     The ALJ Adequately Addressed Evidence Contrary to her Decision**

In Yoakum's final objection, she argues that by ignoring relevant evidence and limiting her discussion only to evidence that supports her ruling, the ALJ violated Fourth Circuit case law and the Commissioner's own regulations. (Dkt. No. 17 at 7). Yoakum maintains that the ALJ is required to discuss any evidence that supports a medical opinion and that, "by not discussing the same physical therapy records that this Court found to be inconsistent with the ALJ's previous finding" of "light work," the ALJ committed legal error and the magistrate judge is allowing it to persist. Id.

17

These arguments were preemptively addressed in Magistrate Judge Seibert's R&R. To be clear, the Court's previous holding was not that the physical therapy records were inconsistent with the ALJ's previous finding of "light work," but rather that, alone, they were insufficient to discredit Dr. Kirk's opinion and provide substantial evidence for the ALJ's position. After remand, the ALJ was much more articulate and offered many reasons as to why she gave Dr. Kirk's opinion little weight.

Finally, Yoakum contends that, because the ALJ must assess RFC based on all of the relevant evidence in her case record, the ALJ erred by limiting the scope of the evidence when evaluating Dr. Kirk's opinion. (Dkt. No. 17 at 8). According to Yoakum, the ALJ must consider the entire record and not limit her analysis to a particular time period on or before Dr. Kirk issued his opinion. Id. By allowing the ALJ to limit her findings to whether evidence existed at the time of Dr. Kirk's opinion, Yoakum asserts the magistrate judge erred. Id.

Yoakum is correct that an ALJ is obligated to consider all relevant medical and other evidence when assessing an RFC. 20 C.F.R. § 404.1545. But Yoakum's argument confuses the ALJ's obligation when assessing an RFC to consider all evidence with the ALJ's determination of how much weight to assign to Dr. Kirk's

opinion. That is to say, the ALJ weighed Dr. Kirk's opinion based on what evidence Dr. Kirk had available to him at the time he authored his opinion. See Dkt. No. 6-10 at 12. This does not mean that the ALJ limited her review of the entire record, both before and after Dr. Kirk's opinion, when she assessed Yoakum's RFC. The ALJ reasoned in part that, because there were no objective studies available, Dr. Kirk's opinion lacked support for his findings, and thus his report deserved less weight than it would had it been based on additional objective evidence. Id.

It is clear from the record that the ALJ weighed and addressed all the evidence, including Dr. Kirk's opinion. Although the ALJ afforded less weight to that opinion that Yoakum might have liked, she did not ignore it. Therefore, the Court concludes that the ALJ appropriately weighed the evidence, including evidence contrary to her conclusion, and therefore overrules this objection.

## V. CONCLUSION

The Court's task on review is to determine whether the ALJ based her findings on substantial evidence, that is, evidence that a "reasonable mind might accept as adequate to support a conclusion." Hays, 907 F.2d at 1456 (quoting Perales, 402 U.S. at 401). Here, such substantial evidence exists, and, for the reasons discussed, the Court:

**YOAKUM V. COMM. OF SOCIAL SECURITY** 1:16CV34

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION [DKT. NO. 16]**

1. **ADOPTS** the R&R in its entirety (Dkt. No. 16);

2. **OVERRULES** Yoakum's objections (Dkt. No. 17);

3. **GRANTS** the Commissioner's motion for summary judgment (Dkt. No. 12);

4. **DENIES** Yoakum's motion for summary judgment (Dkt. No. 8); and

5. **DISMISSES** this civil action **WITH PREJUDICE** and **DIRECTS** that it be **STRICKEN** from the Court's active docket.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order.

DATED: March 8, 2017

/S/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE